FILED & JUDGMENT ENTERED
David E. Weich

Mar  23  2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| ANGEL D. SILER ) | Case No. 09-33227 |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| _____ ) | |

**ORDER**

This matter is before the Court upon the Bankruptcy Administrator's ("BA") Motion to Dismiss Bankruptcy Case for Abuse and the Debtor's Response. A hearing was held on January 28, 2010.

**STATEMENT OF FACTS/PARTIES' POSITIONS**

Most of the relevant facts are derived from Angel Siler's ("Siler") bankruptcy petition and are not in dispute.

Siler is an unmarried IT Specialist who filed a Chapter 7 bankruptcy petition in this Court on November 20, 2009. Under her Form 22A "Means Test," Siler reports a current monthly income ("CMI") (as defined in 11 U.S.C. § 101 (10A)) of $4,887.80 and an annualized CMI of $58,653.60. Because the latter sum exceeded the applicable median

1

family income ($38,794 per year for a North Carolina Household size of 1), Siler was required to complete the second part of Form 22A.[1]

After doing so, Siler reported $382.85 in monthly disposable income under § 707(b)(2), or $22,971 over 60 months. Voluntary Petition Under Chapter 7, page 38, Form 22A, Lines 50 & 51 (Docket No. 1). Since her annualized disposable income exceeds both the sum of $10,950 and 25% of Siler's unsecured, nonpriority debts, Siler failed the Means Test. See 11 U.S.C. § 707(b)(2)(A).

On December 7, 2009, the BA filed a Statement of Presumed Abuse and subsequently this Motion to Dismiss Bankruptcy Case for Abuse. The BA maintains Siler's Chapter 7 case must be dismissed as an "abuse" under § 707(b)(2). Alternatively, the BA argues for dismissal under the "totality of the circumstances" test because she believes Siler possesses an ability to pay creditors a meaningful portion of their debts. 11 U.S.C. § 707(b)(3)(B).

In response, Siler amended Form 22A to add a $63 per month furniture loan payment omitted from the original form. The BA does not oppose this amendment. Siler also seeks to rebut the presumption of abuse with three monthly expenses that she argues are "special circumstances" under § 707(b)(2)(B)(i): (1) a $140.92 student loan payment; (2) a $244.40 retirement plan contribution; and (3) a $97.76 401(k) loan obligation, for a total of $483.08 per month.

The three additional expenses exceed Siler's amended monthly disposable income

---

[1] There is an exception from the Means Test under § 707(b)(7) if the debtor's income is below the median of his or her state. 11 U.S.C. § 707(b)(7)(A). Debtors under this level only complete Parts I and II of Form 22A. See Form 22A, Part III, Lines 14 & 15. Siler's income however exceeds that level, so she was obliged to complete the form. Voluntary Petition Under Chapter 7, page 40, Form 22A, Lines 13-15 (Docket No. 1).

2

of $382.85. If deemed special circumstances, they would rebut the presumption of abuse. However, the BA argues that these expenditures do not fall within the statutory definition of "special circumstances."

The parties' arguments concerning the § 707(b)(3)(B) "totality of the circumstances" test parallel their Means Test dispute. Siler argues that she has a budget surplus of only $86.06 per month[2] and thus, no meaningful ability to repay her creditors. The BA counters that Siler achieves this low monthly surplus by including the aforementioned and objectionable expenses (student loan payments, retirement contributions, and 401k loan repayments) in her budget, as well as an unnecessary life insurance premium ($20.68 per month). The BA posits that if the objectionable $362.84 of withholdings[3] were redirected under a Chapter 13 plan, Siler could pay $21,770 of the $56,214.26 of unsecured debts, or about 39%.

**Holding**: On the facts presented, Siler has failed to demonstrate her student loan payment, retirement contribution, or 401k loan repayment expenses are "special circumstances" within the meaning of § 707(b)(2)(B)(i). Ordinarily, this failure to rebut the presumption of abuse would require that the debtor's case be dismissed or, with her consent, converted to Chapter 13.

However, because Congress has simultaneously directed that ERISA contributions and loan repayments be deductible from CMI in Chapter 13 cases, on the facts presented, such a conversion would yield no distribution to unsecured creditors. In this case, the

---

[2] Based upon a gross monthly income of $4,887.90, a net income of $3,140.58 and monthly expenses of $3,054. Voluntary Petition Under Chapter 7, page 19-22, Schedules I & J (Docket No. 1).

[3] The BA's calculation ignores the $84.06 surplus from Schedules I & J, and assumes that the student loan payment is permitted in Chapter 13.

3

difference in treatment causes an absurdity that is directly contrary to the congressional intent, that while debtors with an ability to repay creditors should file under Chapter 13, debtors lacking that ability are to be permitted Chapter 7 relief. On these rather unusual facts, Siler may remain in Chapter 7.

**DISCUSSION**

Jurisdiction over this proceeding arises under 28 U.S.C. § 1334(a) and the case referencing the order of the U.S. District Court dated July 24, 1984.  A motion to dismiss for abuse is a matter concerning the administration of the estate and a "core" proceeding under 28 U.S.C. § 157(b)(2)(A).

**I.    Statutory Background**

Prior to the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") amendments, a bankruptcy court was authorized to dismiss a case if it constituted a "substantial abuse" of Chapter 7. See 6 Collier On Bankruptcy ¶ 707.04[5][a] (15th ed. rev. 2006).

The 2005 BAPCPA reforms rewrote § 707(b) in an attempt to eliminate Chapter 7 cases by debtors capable of repaying their debts. See 151 Cong. Rec. S2459, 2468-70 (daily ed. Mar. 10, 2005) (Statement of Sen. Hatch).  The statutory standard was reduced from "substantial abuse" to simple "abuse." See, e.g., In re King, No. 08-41975, 2009 WL 62252, at *3 (Bankr. E.D. Tex. 2009).  The presumption in favor of granting relief to the Chapter 7 debtor was removed**.** In re Rudler, 576 F.3d 37, 40 (1st Cir. 2009).  A mathematical calculation, the "Means Test," was added to determine when a case should be presumed to be abusive. 11 U.S.C. § 707(b)(2).  Finally, § 707(b) was augmented to provide that even if a debtor passes the Means Test, the case could still be dismissed if it

was filed in bad faith or if the "totality of the circumstances" indicated abuse. In re Meade, 420 B.R. 291, 298 (Bankr. W.D. Va. 2009) (citing 11 U.S.C. §§ 707(b)(2) & (3)).

**II.  Section 707(b)(2): Means Test**

The Means Test focuses on a debtor's CMI, or average monthly income for the six (6) calendar months prior to the filing of the bankruptcy case. 11 U.S.C. § 101(10A)). Under § 707(b)(2), a presumption of abuse arises "if the Debtor's currently monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of: (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or (II) $10,950." 11 U.S.C. § 707(b)(2)(A)(I).

If, as here, a presumption of abuse arises under the Means Test, the debtor must rebut the presumption by showing "special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative". 11 U.S.C. § 707(b)(2)(B)(i); In re Witek, 383 B.R. 323, 330 (Bankr. N.D. Ohio 2007). Otherwise, the case is subject to dismissal.

The Bankruptcy Code does not define "special circumstances," but merely gives two nonexclusive illustrations: a) a serious medical condition or b) "a call or order to active duty in the Armed Forces". 11 U.S.C. § 707(b)(2)(B). This unfortunate lack of specificity has led to wholesale disagreement as to the meaning of the term.

One group of courts has defined "special circumstances" narrowly: "[T]he plain meaning of "special" provides some instruction to the Court that the expense or adjustment to income in question must be out of the ordinary or exceptional in some

way." In re Delbecq, 368 B.R. 754, 756-57 (Bankr. S.D. Ind. 2007). In re Tauter, 402 B.R. 903 (Bankr. M.D. Fla. 2009); In re Patterson, 392 B.R. 497 (Bankr. S.D. Fla. 2008); In re Smith, 388 B.R. 885 (Bankr. C.D. Ill. 2008); In re Cribbs, 387 B.R. 324 (Bankr. S.D. Ga. 2008); In re Witek, 383 B.R. at 330; In re Pageau 383 B.R. 221, 226 (Bankr. D. N.H. 2008); In re Haar, 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007); In re Parulan, 387 B.R. 168 (Bankr. E.D. Va. 2008). These courts hold that to be "special," a debtor's circumstances must be similar in nature to the two statutory illustrations. That is, they must be "necessary and reasonable" expenses "for which there is no reasonable alternative." In re Tauter, 402 B.R. 903 (Bankr. M.D. Fla. 2009). Courts taking the narrow interpretation reason that Congress intended "to set this bar extremely high, placing it effectively off limits for most debtors." In re Haar, 360 B.R. 759, 760 (Bankr. N.D. Ohio 2007); In re Parulan, 387 B.R. 168 (Bankr. E.D. Va. 2008).

A second line of cases holds that special circumstances need not be "extraordinary" and that a broad range of circumstances may be considered special. In re Martin, 371 B.R. 347, 352 (Bankr. C.D. Ill. 2007); In re Batzkiel 349 B.R. 581, 586 (Bankr. N.D. Iowa 2006); In re Littman, 370 B.R. 820, 830-831 (Bankr. D. Idaho 2007).

Under the broad view, special circumstances need not be outside of a debtor's control. In re Graham, 363 B.R. 844, 850 (Bankr. S.D. Ohio 2007); In re Thompson, 350 B.R. 770, 777 (Bankr. N.D. Ohio 2006); In re Armstrong, 2007 WL 1544591 at 3 (Bankr. N.D. Ohio 2007); In re Tamez, 2007 WL 2329805 at *5 (Bankr. W.D. Tex. 2007); In re Robinette 2007 WL 2955960, 4 (Bankr. D. N.M. 2007). Nor must the expenses be unanticipated. In re Armstrong, 2007 WL 1544591 at 3 (Bankr. N.D. Ohio 2007).[4]

---

[4] A few courts define the term special so broadly that "any legitimate expense that is out of the ordinary for an average family and leaves the debtor with no reasonable alternative but to incur the expense" qualifies. 6

6

A second disagreement between bankruptcy courts exists over a court's options if the Chapter 7 debtor fails to rebut the presumption of abuse. One line of cases treats § 707(b) as a mandatory provision which if not satisfied, requires that the case must be dismissed.[5] In re Hama, 366 B.R. 307, 311 (Bankr. D. Del. 2007); Justice v. Advanced Control Solutions, Inc., 2008 WL 4368668, (W.D. Ark. 2008).

Other courts note inclusion of the word "may" in § 707(b),[6] and, therefore, hold that a court has discretion whether to dismiss the case or to permit it to remain in Chapter 7. In re Mravik, 399 B.R. 202, 210 (Bankr. E.D. Wis. 2008); In re Skvorecz, 369 B.R. 638 (Bankr. D. Colo. 2007).[7]

Like many other BAPCPA interpretations, there are strengths and weaknesses to each of these positions. That said, however, the undersigned sides with the courts that view § 707(b)(2) as mandatory. With the one absurd result exception discussed below, if the presumption of abuse arises and is not rebutted, the case must be dismissed or, with consent, converted. The Court further believes that the congressional purpose behind the Means Test is best served by employing a narrow interpretation of the term "special circumstances." The undersigned therefore holds that to qualify, a debtor's expenses (reductions) must be "special" when compared to the circumstances of other debtors. They must be both necessary and reasonable and expenses for which there is no reasonable alternative. Each of these determinations must be made on a case-by-case

---

Collier on Bankruptcy ¶ 707.05[2][d]; In re Batzkiel 349 B.R. 581, 586 (Bankr. N.D. Iowa 2006).

[5] Or converted to Chapter 13, if the debtor is amenable.

[6] "… the court…**may** dismiss a case. 11 U.S.C.A. § 707 (b)(1)(emphasis added).

[7] However, even these courts acknowledge that the bankruptcy judge's discretion in this area is limited and "should not be exercised lightly". In re Mravik, 399 BR at 210.

7

basis, and decided upon each debtor's individual circumstances.

Against this framework, we next consider Siler's three claimed special circumstances.[8]

### A. Retirement Plan Contributions.

No reported decision has ever held a Chapter 7 debtor's voluntary contribution to his or her retirement plan to be a special circumstance. However, several courts have rejected the assertion. In re Tauter, 402 B.R. 903, 906 -907 (Bankr. M.D. Fla. 2009); In re Robinette, 2007 WL 2955960 (Bankr. D. N.M 2007); In re Johns, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006). These courts reason that a debtor's contributions to a retirement plan are voluntary actions and neither extraordinary nor necessary. They are instead "the antithesis of an expense for which there is no reasonable alternative." In re Tauter, 402 B.R. at 906.

That is certainly the case here. Siler's monthly retirement plan contributions are essentially future payments to herself. While saving for retirement may be prudent, it is generally unnecessary in bankruptcy, and particularly unnecessary for this debtor. Siler, at thirty-one (31) years old, is far from the age of retirement. Her ERISA contributions are not a special circumstance.

### B. 401K Loan Payments

For similar reasons, most courts do not treat 401(k) plan loan payments as special circumstances. Compare In re Lenton, 358 B.R. 651 (Bankr. E.D. Pa. 2006) (special) with In re Egebjerg 574 F.3d 1045, 1053 (9th Cir. 2009); Eisen v. Thompson, 370 B.R.

---

[8] A debtor claiming special circumstances is required to provide itemized documentation of his expenses or a detailed explanation of the special circumstances, which justifies the expenses for which there is no reasonable alternative. Siler has provided only a bare statement of these expenses, but the BA has not objected. Therefore, the Court will let the lack of information go towards the evidentiary issue.

8

762 (N.D. Ohio 2007); In re Smith, 388 B.R. at 888; In re Mowris, 384 B.R. at 240; In re Turner, 376 B.R. at 378; In re Norwood-Hill, 402 B.R. 905, 913 (Bankr. M.D. Fla. 2009).

Again, the problem with treating these expenses as "special" is that most "retirement plan loans are neither extraordinary nor rare." In re Egebjerg 574 F.3d at 1053 (quoting, Eisen v. Thompson, 370 B.R. at 773). Stated another way, "the fact that [the debtor] borrowed from those retirement funds and now wishes to pay the loans back is not a life altering circumstance of the kind referenced in the statute. It is simply the consequence of a prior financial decision." In re Egebjerg 574 F.3d at 1053 (quoting, In re Smith, 388 B.R. 885, 888 (Bankr. C.D. Ill. 2008)).

ERISA loan repayments are simply a means by which a retirement plan participant repays herself for a draw against savings. Under pre-BAPCPA law, such obligations were not considered necessary expenditures, but were instead treated as indicators of substantial abuse. See In re Behike, 358 F.3d 429 (6th Cir. 2004) (citing Harshbarger v. Pees, 66 F3d 775, 777-8 (6th Cir. 1995) and Anes v. Dehart ( In re Anes), 195 F.3d 1277, 180-81 (3d Cir. 1999)).

It is true that in BAPCPA, Congress added a clause in § 1322(f) to overrule Harshbarger and to allow certain ERISA payments to be deducted from disposable income in Chapter 13. Eisen, 370 B.R. at 771. However no corresponding provision was included in the Chapter 7 Means Test. Consequently, even after BAPCPA, courts have generally denied special circumstances treatment to retirement plan loan payments, unless the underlying purpose of the loan was itself extraordinary. See, e.g., In re Egebjerg, 574 F.3d at 1053; Eisen, 370 B.R. at 772 ; In re Smith, 388 B.R. at 888; In re Mowris, 384 B.R. at 240; In re Turner, 376 B.R. at 378.

9

In the present case, Siler has presented no facts that would suggest that her 401k loan was extraordinary in any way. Without such a showing we cannot consider her retirement loan obligation to be a "special circumstance."

### C.   Student Loan Payments

The student loan question is a closer call. Silver argues that her student loan payment is a special circumstance because it is a nondischargeable debt, meaning she has no alternative but to pay it.

Some courts have treated student loan obligations as per se special circumstances for this precise reason. In re Templeton, 365 B.R. 213 (Bankr. W.D. Okla. 2007); In re Delbecq, 368 B.R. 754 (Bankr. S.D. Ind. 2007) In re Knight, 370 B.R. at 438-39; In re Martin, 371 BR 347 (Bankr. C.D. Ill. 2007); In re Haman, 366 B.R. 307, 318 (Bankr. D. Del. 2007).

However, a number of other courts have declined to afford student loan obligations "special circumstances" treatment under § 707(b)(2)(B), even if the debt is nondischargable. See In re Lightsey, 374 B.R. 377 (Bankr. S.D. Ga. 2007); In re Carrillo, 421 B.R. 540 (Bankr. D. Ariz. 2009); In re Vaccarielo, 375 B.R. 809 (Bankr. N.D. Ohio 2007); In re Pageau, 383 B.R. at 228; Eisen, 370 B.R. at 773.

Many of these cases deny such treatment based on the aforementioned rule that to be special, the expense or adjustment to income "must be out of the ordinary or exceptional in some way." In re Delbecq, 368 B.R. 754, 756-57 (Bankr. S.D. Ind. 2007). Just as with most retirement loans, there is usually nothing rare or unusual about a student loan.

Further, treating student loans as special circumstances permits them to be paid in

10

full while all other unsecured debts are paid nothing and are discharged, a payment priority not granted by Congress. In re Carrillo, 421 B.R. at 546.

These are good reasons not to treat nondischargable debts as per se special circumstances. If a debt need only be nondischargable to be classified as a special circumstance, then many categories of debts, including frauds, willful and malicious injuries, drunk driving liabilities and even taxes would gain priority status not granted in § 507(a). In re Vaccarielo, 375 BR. at 815; 11 U.S.C. § 507(a). Presumably, if Congress meant that nondischargeable debts categorically qualify as special circumstances it would have stated as much.

The undersigned believes the second line of cases represents the better-reasoned view. There may be certain situations where student loans can be considered special circumstances, for example where the loans were necessitated by some unforeseen injury, disability or perhaps an employer closing. In re Pageau, 383 B.R. at 227-28. However, in most situations these student loans were incurred in the ordinary pursuit of a career. They are not unique and they do not enjoy statutory priority over other creditor claims. They will rarely, if ever, qualify as special circumstances.

In the present case, Siler has given us no reason to think of this obligation as extraordinary in any way, so we must conclude these are not "special circumstances."

### III.    Judicial Leniency, Future Expenses & Potential Chapter 13 Case Results

Anticipating that she might not be able to rebut the presumption of abuse, Siler makes several arguments why she should be permitted to stay in Chapter 7.

11

First, Siler asks this Court to ignore the Means Test in favor of more "accurate" figures found in Schedules I and J in her Petition. She cites § 105(a)[9] as authority for doing so. This is not an option, for two reasons.

First, it is clear that a bankruptcy court may not use its equitable powers in derogation of other bankruptcy statutes, such as § 707(b)(2). <u>Official Comm. of Equity Sec. Holders v. Mabey</u>, 832 F.2d 299, 302 (4th Cir. 1987).

Second, the discretion that Siler invites the Court to exercise is contrary to legislative intent. Under the old "substantial abuse" test, bankruptcy judges exercised broad latitude as to Chapter 7 debtor eligibility. It was the express intention of Congress in passing the BAPCPA § 707 changes to replace judges' subjective value judgments concerning a debtor's lifestyle with an objective bright-line test, the Means Test. <u>In re Ross-Tousey</u>, 549 F.3d 1148, 1159 (7th Cir. 2008). Since § 707(b) mandates use of the Means Test to gauge payment ability, if Siler is to be permitted to stay in Chapter 7 it is not because it is equitable but because § 707(b) permits it.

Admittedly, the Means Test is an odd configuration. It seeks to provide a "snapshot" of a debtor's present financial condition, but does so based on historical figures (the six (6) month period preceding bankruptcy). And while the Means Test purports to gauge a debtor's ability to pay creditors, it makes that assessment upon an amalgamation of both actual and normalized expenses. It is essentially financial stew, but a stew whose ingredients are statutorily mandated. Therefore under "plain meaning" principles, we apply § 707(b)(2) based upon the wording of the statute. <u>U.S. Dept. of Labor v. North Carolina Growers Ass'n</u>, 377 F.3d 345, 350 (4th Cir. 2004). If that

---

[9] Section 105 authorizes a bankruptcy judge to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

12

wording is plain, our sole function is to enforce the statute. See Lamie v. United States Trustee, 540 U.S. 526, 534 (2004).

Siler does not cite any lack of clarity in the Means Test, so this Court is obliged to enforce the test unless (1) "literal application of the statutory language at issue results in an outcome that can truly be characterized as absurd, i.e., that is so gross as to shock the general moral or common sense...." or (2) if "literal application of the statutory language at issue produces an outcome that is demonstrably at odds with clearly expressed congressional intent...." In re Sunterra Corp., 361 F.3d 257, 265 (4th Cir. 2004).

Here, Siler finds traction. As she points out, the expressed intent of Congress in enacting the Means Test is to restrict Chapter 7 relief to debtors who cannot afford to make payments to unsecured creditors in Chapter 13. In re Mravik, 399 B.R. 202, 213 (Bankr. E.D. Wis. 2008); see also, 151 Cong. Rec. S2459, 2468-70 (daily ed. Mar. 10, 2005) (Statement of Sen. Hatch).

Siler argues that barring her from Chapter 7 under the Means Test result is absurd because she lacks both the wherewithal and the legal obligation to fund a distribution to unsecured creditors under a Chapter 13 plan. To match facts to theory, Siler returns to her Chapter 7 Means Test result. She has a monthly disposable income of $382.85, which after the $63 additional secured payment yields $319.85.

Siler reminds the Court that in Chapter 13, both ERISA contributions and plan loan repayments are deductible from a debtor's disposable income. See 11 U.S.C. § 541(a)(7) and § 1322(f). Siler further posits that in Chapter 13 she would be able to pay her student loan payment in full and deduct the monthly payment ($140.92 each month) from her disposable income. Finally, Siler (who drives an old car) anticipates the need to

purchase a replacement vehicle at some point over the next five years.[10] This prospective car payment further reduces her disposable income. Between these expenses, Siler maintains a Chapter 13 plan distribution to unsecured creditors is an impossibility.

The Court agrees with Siler's conclusion, if not this entire theory. First, the Court must disregard the car loan expense as mere speculation. A payment obligation cannot be considered until a liability exists. No such liability exists.

Second, the Court finds Siler's assumption that she will be permitted to pay her monthly student loan payment in full in Chapter 13 ahead of other unsecured creditors to be misguided. Many courts, this one included, do not permit payment of a student loan at a higher rate than other unsecured debts. This discriminates unfairly against other similarly sited creditors as proscribed by § 1322(b)(1).[11] In re Groves, 39 F.3d 212 (8th Cir. 1994).

However, Siler's argument that her ERISA contributions and loan payments are deductible is well grounded. As noted above, Congress chose to exclude 401(k) loan payments and pension contributions from disposable income in Chapter 13. Since the monthly payment for these two items alone ($342.16) exceeds Siler's monthly net income ($321.85), if in Chapter 13 she would pay nothing to unsecured creditors.

Where a hypothetical Chapter 13 plan would not pay a distribution to unsecured creditors, several courts have declined to dismiss a Chapter 7 case based on a Means Test violation. See In re Skvorecq, 369 B.R. 638 (Bankr. D. Colo. 2007); In re Mravik, 399 B.R. 202.

---

[10] The length of a Chapter 13 plan.

[11] Section 1322(b)(10) permits the payment of interest on such a nondischargeable claim, but only to the extent that all other allowed unsecured claims are paid.

14

The Court agrees with the holdings in these two cases, if not all of their reasoning.[12] To use the Means Test to deny Chapter 7 relief to an individual, who could not pay unsecured creditors in Chapter 13 and who, as a matter of clear congressional election would not be required to do so, is absurd and contrary to the purpose of the Means Test.

### IV. Section 707(b)(3): Totality of the Circumstances

The BA's alternative theory posits that because Siler has ability to pay a substantial part of her creditors, this case must be dismissed under § 707(b)(3), the "totality of the circumstances" test.

The "totality of circumstances" test has its roots in pre-BAPCPA law. In re Nockerts, 357 B.R. 497, 505-06 (Bankr. E.D. Wis. 2006) (citing In re Ontiveros, 198 B.R. 284 (C.D. Ill. 1996)). Under the old law, three different interpretations developed to address what constituted "substantial abuse." These were: (1) an ability to pay debts alone (8th and 9th Circuits); (2) a "totality of the circumstances" indicative of abuse (4th circuit); and (3) an ability to pay alone, unless the debtor proved mitigating circumstances. In re Ontiveros, 198 B.R. at 287.

Under the Fourth Circuit's old "totality of the circumstances test, to be dismissed, a court must consider not just the debtor's ability to fund a Chapter 13 plan, but other factors. Green v. Staples, 934 F.2d 568, 572 (4th Cir. 1991). These included:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;
>
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
>
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;

---

[12] At least one of these cases casts this situation as a reason to treat § 707(b)(2) as discretionary. The Court differs in that it believes the statute mandatory, but views this circumstance to cause an absurdity excusing compliance with an otherwise unambiguous statute. However, the net result is the same.

15

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

Id.

The Means Test of § 707(b)(2) has been interpreted to be a codification of the per se rule. In re Nockerts, 357 B.R. at 505. However, even after a debtor passes the Means Test, BAPCPA mandates that he or she pass a second test of abuse by including in § 707(b)(3) the Fourth Circuit's "totality of the circumstances" test.

Since under the old totality of the circumstance test a showing of something more than ability to pay was required to warrant dismissal, that would appear to remain the case under § 707(b)(3). Id.

Apart from a potential ability to pay, there are no other factors in the record indicative of abuse. Even this potential ability to pay is founded on this Court presently disallowing expenses (the ERISA withholdings) that Congress has expressly approved for Chapter 13. Neither part of the totalities of the circumstances test is met.

## V.    Conclusion

For the reasons stated above, the BA's motion to dismiss is DENIED.

**SO ORDERED.**

| | |
|---|---|
| This Order has been signed electronically.  The judge's signature and court's seal appear at the top of the Order. | United States Bankruptcy Court |